# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STEVEN R. MILLER,** | **1:12-cv-01288-LJO** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT (ECF NOs. 68, 70)** |
| **v.** | |
| **ALBERT NAJERA, *et al.*,** | |
| **Defendants.** | |

## I. <u>INTRODUCTION</u>

Plaintiff is a federal prisoner proceeding pro se in this case brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against former U.S. Marshal Albert Najera ("Marshal Najera"), and under 42 U.S.C. § 1983 against Margaret Mims, Rick Hill, the County of Fresno, an unknown Fresno County Jail Sergeant, and Does 1, 2, 4-6, 8-11, 13, and 14 (collectively, "County Defendants"). This case is before the Court on Marshal Najera's and the County Defendants' motions for summary judgment.

## II. <u>PROCEDURAL HISTORY</u>

Plaintiff filed his complaint on July 30, 2012, and a first amended complaint on January 22, 2013. ECF Document ("ECF.") Nos. 1, 10. The first amended complaint was screened and dismissed with leave to refile on February 2, 2015. ECF No. 17. Plaintiff filed a second amended complaint on July 22, 2015, which was screened and dismissed with leave to refile on October 5, 2015. ECF Nos. 23, 25. On May 13, 2016, Plaintiff filed his third amended complaint ("TAC"). ECF No. 32. The TAC was screened on June 9, 2016, and Plaintiff's claim of failure to protect and deliberate indifference against

Marshal Najera and the County Defendants was permitted to proceed. ECF No. 33 at 6.

Marshal Najera filed a motion for summary judgment on September 1, 2017. ECF No. 68. The County Defendants filed a motion for summary judgment on September 5, 2017. ECF No. 70. Plaintiff filed an opposition to both motions on November 27, 2017. ECF No. 83. Marshal Najera filed a reply on December 4, 2017, and the County Defendants filed a reply on December 15, 2017. ECF Nos. 86, 91.[1]

### III. <u>FACTUAL BACKGROUND</u>

The following is drawn from Plaintiff's TAC.[2] ECF No. 32. On June 15, 2010, Plaintiff was arrested on federal criminal charges and housed in Fresno County Jail ("FCJ"). *Id*. at 13. FCJ staff processed Plaintiff and released him into general population. *Id*. at 14. Soon after being assigned a cell, Plaintiff encountered Jeffrey Braun, an inmate awaiting sentencing on charges which included raping Plaintiff. *Id*. Braun threatened Plaintiff. *Id*. Plaintiff complained to a FCJ guard, who told Plaintiff to stay away from Braun. *Id*.

On June 16, 2010, Plaintiff was transported to the federal courthouse for arraignment. *Id.* at 15. During the process, Plaintiff disclosed his concerns about Braun to two Deputy Marshals, a bail processor, and his attorney. *Id*. at 15-16. When he returned to FCJ, Plaintiff spoke to Officer Gutierrez, who confirmed Plaintiff's concerns and had Braun removed from the unit. *Id*. at 16-17. Braun was reassigned to an adjacent unit where he continued to make suggestive gestures to Plaintiff through a plexiglass wall until Braun was removed from the unit in early July. *Id*. at 17.

At some time between mid-July and late August of 2010, Lazar Diaz, another inmate, began a pattern of repeatedly raping Plaintiff. *Id*. at 17-18. Plaintiff initially did not report the rapes, fearing reprisals and beatings. *Id*. at 18. On October 13, 2010, after a rape that left Plaintiff with abdominal pain and rectal bleeding, Plaintiff presented Officer Gutierrez with a "white sheet" complaint against Mr.

---

[1] Good cause appearing, the County Defendants' request to file an overlength reply brief, ECF No. 90, is GRANTED.

[2] A pro se pleading signed under penalty of perjury may serve as evidence on summary judgment, so long as the facts contained therein are based on personal knowledge and would otherwise be admissible in evidence. *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004).

Diaz. *Id*. at 19. Officer Gutierrez removed Plaintiff from the unit and initiated an investigation. *Id*. at 19-20. During the investigation, Plaintiff spoke with the acting warden of FCJ and a rape victims advocate and received medical treatment. *Id*. at 20.

After being returned to FCJ, Plaintiff was reclassified and assigned to protective custody. *Id*. at 21. He remained isolated in protective custody for 30 days, then was transferred to a unit which Plaintiff referred to as "Gay Pod." *Id*. at 21-22. During the last week of November 2010, soon after his transfer to Gay Pod, Plaintiff was attacked and raped by several inmates and an individual know to Plaintiff as "Methman." *Id*. at 22-23. Following this rape, Plaintiff developed "flu-like symptoms" and experienced rectal bleeding. *Id*. at 24. Plaintiff was processed out of FCJ and into federal custody on December 29, 2010. *Id*. at 24. Plaintiff complained of the rapes and his physical condition during the transition process. *Id*. On January 10, 2011, Plaintiff was booked into Federal Correctional Institution, Lompoc. *Id*. at 25. He informed prison personnel of the assaults and rapes, and the resulting injuries. *Id*. On March 7, 2011, Plaintiff was notified that he was HIV-positive. *Id*.

## IV. <u>STANDARD OF DECISION</u>

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or "unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the non-moving party's case. *Id*. When the moving party meets its burden, the non-moving party must demonstrate that there are genuine disputes as to material facts by either:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

# V. ANALYSIS

## A. Marshal Najera's Motion for Summary Judgment

Plaintiff alleges that Marshal Najera, while serving as U.S. Marshal for the Eastern District of California, acted with deliberate indifference to Plaintiff's safety in allowing him to be housed at FCJ. ECF No. 32 at 3-4. Plaintiff brings his claim against Marshal Najera in both his individual and official capacities. *Id*. Marshal Najera moves for summary judgment, arguing that Plaintiff has not adduced evidence to show that there is a genuine dispute of material fact that would entitle him to relief.[3] ECF

---

[3] Marshal Najera also argues that the claim advanced by Plaintiff is a new *Bivens* context, and that special factors weigh

No. 68-2 at 11.

Plaintiff alleges a claim under *Bivens*, which provides a remedy for violation of civil rights by federal actors. Under the doctrine of sovereign immunity, a *Bivens* action cannot be brought against the United States, its agencies, or federal agents sued in their official capacity. *See FDIC v. Meyer*, 510 U.S. 471, 486 (1994); *Vaccaro v. Dobre*, 81 F.3d 854, 857 (9th Cir.1996); *Cato v. United States*, 70 F.3d 1103, 1110 (9th Cir. 1995). Therefore, to the extent that federal officers are sued in their official capacity, such claims are barred by the doctrine of sovereign immunity. *Gilbert v. DaCrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). Although sovereign immunity does not bar damages actions against federal officials in their individual capacities, an individual may not be held liable in a *Bivens* action for the actions of their subordinates on the theory of *respondeat superior*. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir.1991) (citations omitted). "[A] *Bivens* action is the federal analog to an action against state or local officials under [42 U.S.C.] § 1983," and supervisory liability under *Bivens* is subject to the standards applicable to § 1983 supervisory claims. *Starr v. Baca*, 652 F.3d 1202, 1206-08 (9th Cir. 2011). Because individual "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant," a supervisor may be held "liable for the constitutional violations of subordinates 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).[4] Moreover, there must be an actual connection or link between the actions of defendant and the deprivation allegedly suffered. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit Court of Appeals has held that "[a] person 'subjects' another to deprivation of a constitutional right . . . if he does an affirmative act, participates in another's affirmative

---

against expanding *Bivens*. ECF No. 68-2 at 6-9. He also argues that qualified immunity applies. *Id*. at 9-11. Since Plaintiff has not produced any evidence that Marshal Najera personally participated in the alleged constitutional violation(s), the Court will not address Marshal Najera's remaining defenses.

[4] *Bivens* actions and actions under 42 U.S.C. § 1983 are construed identically. *Van Sturm v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991).

acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978).

Plaintiff's claim against Marshal Najera in his official capacity is barred by sovereign immunity. Plaintiff's individual capacity claim is based on the allegation that Marshal Najera knew, or should have known, that conditions at FCJ were "dangerous and unconstitutional" and that housing Plaintiff at FCJ despite this knowledge constitutes deliberate indifference. ECF No. 32 at 3-4. Marshal Najera's appointment as U.S. Marshal for the Eastern District of California began on October 25, 2010. Assuming the truth of the facts as presented by Plaintiff, Plaintiff was housed in FCJ, harassed by Mr. Braun, assaulted by Mr. Diaz, and removed from general population housing on or before October 13, 2017, prior to the date on which Marshal Najera assumed his position in the Eastern District of California. There is no vicarious liability under *Bivens*, and claims must be based on the individual actions of each defendant. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Marshal Najera cannot therefore be liable in this case for any harm to Plaintiff which occurred before October 25, 2010.

Marshal Najera is also entitled to summary judgment on any claims stemming from incidents that occurred after October 25, 2010. Marshal Najera submitted a declaration indicating that he did not play any role in placing Plaintiff at FCJ; did not personally participate in any housing decision related to Plaintiff; that the contract which generally governed the housing of federal pretrial detainees at FCJ was in place prior to October 25, 2010; that he had no authority or occasion to review the general policy of housing of inmates at FCJ while Plaintiff was housed there; had no personal knowledge of unsafe or unconstitutional conditions at FCJ; and had never read (until this litigation) the 2006 Jail & Justice System Assessment prepared for the County of Fresno on which Plaintiff relies. ECF No. 68-4 at 3-6. Plaintiff has not adduced any evidence to suggest otherwise. Plaintiff's, conclusory statements that Marshal Najera "could not have been in charge [of the U.S. Marshal's Service] without at least some knowledge of the Jail and Justice System Assessment for the County of Fresno," "Najera knows more about the truth than he lets on," and that Marshal Najera's declaration is "too far-fetched to be believed"

are insufficient to sustain his burden of proof. ECF No. 83 at 80-82.

Suggestions and suppositions, without supporting facts and evidence, are not enough to meet the burden of defending against a motion for summary judgment. Summary judgment must be entered if, "after adequate time for discovery and upon motion," a party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. The party seeking summary judgment "bear[s] the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. Here, Marshal Najera has identified, as one basis for summary judgment, the absence of any evidence, apart from Plaintiff's conjectures, that Marshal Najera had any particular knowledge of Plaintiff, his housing situation, or the assaults and rapes of Plaintiff at FCJ. ECF Nos. 68-2 at 11; 86 at 1. Plaintiff has not pointed to any evidence supporting his claim that Marshal Najera was involved with Plaintiff's housing at FCJ in any direct capacity. Without something more than mere conjecture, Plaintiff has failed to make a sufficient showing linking Marshal Najera to the actions of his subordinates and FCJ staff. Therefore, Marshal Najera's motion for summary judgment is GRANTED.

**B.      The County Defendants' Motion for Summary Judgment**

The County Defendants move for summary judgment, arguing that Plaintiff's claims for failure to protect and deliberate indifference are barred because he has not exhausted his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"). ECF No. 70-3 at 20-26. Plaintiff argues that remedies were unavailable because he was not aware of the process for seeking administrative remedies, that he submitted "white sheets" and complained about his situation to FCJ personnel, and that FCJ staff should have educated him as to the proper procedures. ECF No. 83 at 1-7.

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Although once within the discretion of the district court, exhaustion in prisoner cases covered by § 1997e(a) is now mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). All available remedies must now be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Id.* (citation omitted). "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001). Similarly, exhaustion is a prerequisite to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

Section 1997e(a) requires "proper exhaustion" of available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). A prisoner not only must pursue every available step of the prison appeal process but also must adhere to "deadlines and other critical procedural rules" of that process. *Id.* at 90. "[I]t is the prison's requirements, and not the PLRA, that defines the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). The exhaustion requirement extends to all prisoner suits seeking redress for prison conditions, regardless of whether they involve excessive force or a different violation. *Porter*, 534 U.S. at 532.

The PLRA does not create a pleading requirement, but rather a defense that must be raised and proved by the defendant. *Jones*, 546 U.S. at 216; *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). The defendant must meet the "very low" burden of establishing that "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca* [*Albino II*], 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). The burden then shifts to the plaintiff, who may rebut by showing that "local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996). The PLRA does not impose a total exhaustion requirement; only unexhausted claims are barred from proceeding, and a single unexhausted claim does not prevent the rest of the matter from going forward.

*Small v. Camden Cnty.*, 728 F.3d 265 269 (3d Cir. 2013).

Based on the Declaration of Lt. Russell Duran, ECF No. 70-6, and the County Defendants' statement of undisputed material facts ("UMFs"),[5] ECF No. 70-2, the FCJ had a two tiered grievance system during the period Plaintiff was in the jail. An inmate initiated the grievance process by submitting form J-105. ECF No. 70-6 at ¶ 17. Grievances could be filed for "any condition of confinement at the Jail, including, but not limited to, officer conduct, disciplinary actions, food, mail, medical care, legal services, and telephone," but not for the conduct of another inmate. *Id*. at ¶¶ 20-21. Once an inmate completed and signed form J-105, with assistance if necessary, the form was sent to the grievance lieutenant for logging, numbering, and scanning into FCJ's laser-fiche system. *Id*. at ¶¶ 23, 24, 27, 28. The watch commander or unit supervisor then assigned the grievance for investigation. *Id*. at ¶ 29. FCJ regulations did not establish a firm deadline for responding to grievances, but grievances were usually investigated and processed within 14 days. *Id*. at ¶ 30. The investigator made a recommendation to either sustain or not sustain the grievance, and the Bureau Commander made a final decision on the grievance. *Id*. at ¶ 31. Grievances were deemed exhausted after review by the Bureau Commander. *Id*. at ¶ 33. New inmates in FCJ were given a copy of the "Inmate Orientation Handbook" which explained the grievance process. *Id*. at ¶ 15. In addition to the grievance process, inmates could submit "white sheets," or inmate request forms, in order to bring jail staff's attention to issues with other inmates. *Id*. at ¶ 21.

Based on the foregoing, the Court finds that the County Defendants have met their burden to show that there was an available administrative remedy. Plaintiff does not argue that he exhausted the FCJ grievance process for his claim. *See* ECF No. 83 at 1-2. Therefore, the Court also finds that Plaintiff did not exhaust remedies. The burden now shifts to Plaintiff to rebut by showing that "there is something in his particular case that made the existing and generally available remedies effectively unavailable to

---

[5] Plaintiff objects to many of the UMFs. ECF No. 83 at 21-58. His objections to facts pertaining to the grievance procedure at FCJ are based on the assertion that Plaintiff was unaware of the procedures, not whether those procedures were in place at FCJ. *Id*. at 49-50. To the extent that Lt. Duran's declaration and the UMFs describe the structure of the grievance system at FCJ, they are unopposed.

him." *Albino II*, 747 F.3d at 1172.

While the PLRA's mandate is firm and not subject to exception, "[a]n inmate is required to exhaust only *available* remedies." *Albino II*, 747 F.3d at 1171 (italics in original). A remedy is available if it is, "as a practical matter, . . . capable of use; at hand." *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005) (quoting *Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002)). Ignorance of the grievance process is generally not sufficient to show that remedies were unavailable, as inmates are expected to make a reasonable, good faith effort to discover and exhaust the appropriate procedure. *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010). Thus, to rebut a failure to exhaust defense, a plaintiff must show both that they were subjectively unaware of the procedure and that the procedure was "unknowable with reasonable effort." *Albino v. Baca* [*Albino I*], 697 F.3d 1023, 1037 (9th Cir. 2012), *rev'd on reh'g en banc, Albino II*, 747 F.3d at 1162.

Plaintiff argues that he was unaware of the existence of administrative remedies at FCJ and that he made other complaints to prison officials which put those officials on notice of his potential claims. ECF No. 83 at 1-4. In doing so, Plaintiff appears to conflate his complaints of physical and sexual abuse at the hands of other prisoners with the subject of the remaining claims in this case: the alleged failures to protect and deliberate indifference of the County Defendants related to Plaintiff's personal security and bodily integrity. Plaintiff asserts that he submitted "white sheets" to complain about the assaults and rapes he experienced at the hands of other prisoners. *See id*. at 1-2 ("I wrote 'white' and 'green' sheets spelling out my issues"). The PLRA requires that exhaustion be completed "in accordance with the applicable procedural rules," that is, the prison's grievance process. *Woodford*, 548 U.S. at 88; *see also Jones*, 549 U.S. at 218. The process here requires that complaints about jail conditions be pursued through the grievance process, not through "white sheet" inmate requests or informal channels. ECF No. 70-6 at ¶¶ 17-19, 21.

Plaintiff argues that he was unaware of the grievance procedures, saying that he "at the time had no understanding of the procedure," and his failure to exhaust should be excused. ECF No. 83 at 1. Even

if Plaintiff was unaware of the grievance procedures, to meet his burden of showing they were unavailable he would also need to show that the procedures were "unknowable with reasonable effort." Plaintiff has made no such showing. Plaintiff does not dispute that he was aware of the inmate handbook while at FCJ, or that the handbook explained the grievance process. ECF No. 83 at 49-50. The existence of the handbook indicates that, in fact, the grievance procedures were knowable. *See Albino I*, 697 F.3d at 1037-38 (holding that an inmate's assertions that he never had an orientation, never saw a manual outlining grievance procedures, had never spoken to another inmate about the manual, and had never seen a complaint box did not show that the inmate could not have discovered the grievance process with reasonable effort). Thus, Plaintiff's argument is unpersuasive.

Plaintiff's argument that the grievance process was rendered unavailable because FCJ staff did not explain it to him also fails. The key question here is whether otherwise available process was rendered unavailable due to special circumstances. The PLRA does not require that jail and prison staff determine when an inmate might want to file a grievance and to help that inmate with the process. *See Castrejon v. Sniff*, Case No. EDCV 13-01254 DOC (AJW), 2017 WL 2469970, at *4 (C.D. Cal. Mar. 9, 2017). It is not a jail's burden to inform inmates about grievance procedures. *Albino I*, 697 F.3d at 1039. Had FCJ staff taken some affirmative actions to prevent Plaintiff from becoming aware of the grievance procedures, or even refused a request for information about the procedures, remedies might have been rendered unavailable. *See id.* at 1177. No such showing has been made here.

Plaintiff obliquely raises one final pertinent issue which merits some consideration. Plaintiff argues that he did not have an opportunity to file a grievance before he was transferred out of FCJ on December 29, 2010. ECF No. 83 at 2. When other courts have considered whether a transfer from one jail or prison system to another renders remedies unavailable, they have generally concluded that "where a plaintiff had an opportunity to meaningfully pursue the grievance while incarcerated at the facility where the grievance arose, the failure to exhaust those remedies was not excused by the plaintiff's transfer to a different facility." *Hartry v. Cnty. of Suffolk*, 755 F. Supp. 2d 422, 433 (E.D.N.Y. 2010).

Viewing the evidence in a light most favorable to Plaintiff, the last rape incident Plaintiff describes took place during the last week of November 2010. ECF No. 32 at 23-24. The Court can therefore assume on this summary judgment record that Plaintiff had nearly a month to file a grievance before transferring out of FCJ. One court found that a period of one month was an adequate amount of time to appeal the denial of a grievance, and also noted that transfer from a county jail to a state facility did not block the plaintiff from pursuing his remedies. *See Castrejon*, 2017 WL 2469970 at *5 ("Indeed, nothing prevented plaintiff from mailing his appeals to the facility commander after he was transferred."). Other courts have found that periods of a few days between an incident and a transfer did not allow for a meaningful opportunity. *See Pauls v. Green*, 816 F. Supp. 2d 961, 968 (D. Idaho 2011) (transfer from county jail to state prison within a few days of a sexual assault did not leave an adequate opportunity to exhaust); *Alonso-Prieto v. Pierce*, No. 1:11-cv-00024-AWI-MJS (PC), 2014 WL 250342, at *4 (E.D. Cal. Jan. 22, 2014) (a plaintiff transferred out of a state facility within two days of an incident and not situated in a federal facility until after the close of the ten day window for filing grievances established by the state facility did not have a meaningful opportunity to exhaust his administrative remedies).

Here, the complained-of conduct – the failure to protect Plaintiff against sexual assaults (or threats of sexual assault) by other inmates – stretches over a period of more than six months. Even viewing the last assault as an isolated incident, the undisputed facts show that Plaintiff had approximately one month in FCJ from its date until his transfer to federal custody. *See* ECF No. 32 at 24. The Court finds that one month constitutes a meaningful opportunity for Plaintiff to exhaust his remedies. The Court also notes that no evidence has been presented which suggests that FCJ does not accept or process grievance forms from a former inmate. Since Plaintiff had a meaningful opportunity to submit a grievance, his transfer did not render administrative remedies unavailable.

The Court finds that Plaintiff has failed to exhaust his available administrative remedies. Therefore, the County Defendants' motion for summary judgment is GRANTED as to all claims in this case. The proper remedy is dismissal without prejudice. *Jones*, 549 U.S. at 223; *Lira v. Herrera*, 427

F.3d 1164, 1175-76 (9th Cir. 2005).

## VI. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons,

(1) Defendant Najera's motion for summary judgment is GRANTED; and

(2) Plaintiff's claim against the County Defendants is DISMISSED WITHOUT PREJUDICE.

The trial scheduled for March 20, 2018, and all associated deadlines are VACATED. The Clerk of Court

is directed to CLOSE THIS CASE.


IT IS SO ORDERED.

Dated:   **December 21, 2017**          **/s/ Lawrence J. O'Neill**
                                        UNITED STATES CHIEF DISTRICT JUDGE